**NOT FOR PUBLICATION**

**FILED**

UNITED STATES COURT OF APPEALS

MAR 18 2025

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

FOR THE NINTH CIRCUIT

FLOR DEL CARMEN MELGAR-
MELGAR; JHONY JAIRO PEREZ-
NAJARRO; SAIRA SAHURI PEREZ-
MELGAR,

        Petitioners,

 v.

PAMELA BONDI, Attorney General,

        Respondent.

No. 24-2225

Agency Nos.
A220-309-653
A220-309-654
A220-309-655

MEMORANDUM*

On Petition for Review of an Order of the
Board of Immigration Appeals

Submitted March 7, 2025**
San Francisco, California

Before: WARDLAW, PAEZ, and BEA, Circuit Judges.

    Flor Del Carmen Melgar-Melgar ("Melgar"), Jhony Jairo Perez-Najarro

("Perez"), and their minor child (collectively, "Petitioners"), natives and citizens of

---

    *     This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

    **    The panel unanimously concludes this case is suitable for decision without oral argument. *See* Fed. R. App. P. 34(a)(2).

El Salvador, petition for review of the decision of the Board of Immigration Appeals ("BIA") dismissing Petitioners' appeal from an order of the Immigration Judge ("IJ") denying their applications for asylum and withholding of removal.[1] The parties are familiar with the facts, so we recount them only as necessary. We have jurisdiction under 8 U.S.C. § 1252(a)(1), and we deny the petition.

Perez claimed past and future persecution by gangs on account of his membership in a particular social group defined as "Salvadoran individuals who receive remittances from the United States." Melgar claimed past and future persecution by gangs on account of her membership in a particular social group defined as "the immediate family of Jhony Jairo [Perez]."[2]

We review the BIA's decision "and those parts of the IJ's decision that the BIA expressly adopted." *Umana-Escobar v. Garland*, 69 F.4th 544, 550 (9th Cir. 2023) (citing *Garcia v. Wilkinson*, 988 F.3d 1136, 1142 (9th Cir. 2021)). Factual determinations are reviewed for substantial evidence and legal determinations de novo. *Id.*

1. Denial of the motion to continue. We review the denial of a motion to

---

[1] The BIA found that Petitioners waived their challenge to the IJ's denial of protection under the Convention Against Torture ("CAT"), and Petitioners do not challenge that finding here. Accordingly, Petitioners have waived their CAT claims. *See Lopez-Vasquez v. Holder*, 706 F.3d 1072, 1079–80 (9th Cir. 2013).

[2] Petitioners asserted they were persecuted on account of their political opinion, but they have since abandoned those claims on appeal.

continue for abuse of discretion. *Garcia v. Lynch*, 798 F.3d 876, 881 (9th Cir. 2015), *abrogated on other grounds by Coria v. Garland*, 114 F.4th 994 (9th Cir. 2024). A continuance may be granted when "good cause" is shown, and the denial of a continuance "will not be overturned except on a showing of clear abuse." *Id.* (first quoting 8 C.F.R. § 1003.29; and then quoting *Sandoval-Luna v. Mukasey*, 526 F.3d 1243, 1247 (9th Cir. 2008)).

The BIA did not abuse its discretion when it found that the IJ did not err in denying Petitioners' request for a continuance. Petitioners argue that the IJ did not apply the good cause standard, and that counsel's personal emergency and technical difficulties justified a continuance. Not so. First, the IJ applied the good cause standard. Second, Petitioners were not prevented from submitting evidence. Petitioners' counsel stated that a continuance would allow him to present legal "argument," not additional evidence. Third, Petitioners previously received a continuance. Fourth, regarding the Petitioners' technical difficulties, the IJ suggested that Petitioners could resolve them by appearing in-person at the immigration courthouse, which was half a block away from counsel's office. But counsel chose not to do so. Nonetheless, the IJ did offer to continue the hearing for a week, but Petitioners' counsel refused. Finally, Petitioners' counsel represented that his own personal circumstances would not affect his ability to represent Petitioners. Accordingly, the agency did not abuse its discretion in

24-2225

denying Petitioners' motion to continue.

2. <u>Due Process</u>.  Allegations of due process violations are reviewed de novo. *Benedicto v. Garland*, 12 F.4th 1049, 1058 (9th Cir. 2021).  To bring a viable due process claim, Petitioners must show: (1) that they were "prevented from reasonably presenting his [or her] case," and (2) that they were prejudiced, meaning that "the outcome of the proceeding may have been affected by the alleged violation." *Ibarra-Flores v. Gonzalez*, 439 F.3d 614, 620–21 (9th Cir. 2006) (citations omitted).  A "violation of rights" must exist to sustain a due process claim.  *Padilla-Martinez v. Holder*, 770 F.3d 825, 830 (9th Cir. 2014). Petitioners argue three separate due process violations infringed on their right to a full and fair hearing.  But none holds merit.

First, Petitioners argue that the denial of their request to remove their proceedings from the "Dedicated Docket"[3] violated their due process rights.[4]  The record does not suggest that Petitioners were prevented from presenting their claims.  Even if Petitioners were placed on the Dedicated Docket "suddenly and without advance notice leaving Petitioners incapable of submitting evidence prior

---

[3] Cases on the "Dedicated Docket" are fast tracked with the goal that cases are completed "within 300 days after the initial master calendar hearing."

[4] Petitioners also assert an equal protection claim that "Salvadorans remained on the Dedicated Docket subjected to expedited treatment while Nicaraguans and other nationalities were taken off without notice."  But Petitioners do not present facts nor cite case law substantiating this claim.  Thus, Petitioners have waived this argument. *Greenwood v. FAA*, 28 F.3d 971, 977 (9th Cir. 1994).

to the individual hearing," the IJ previously granted Petitioners a four-month continuance to gather evidence, which Petitioners used to do so. Thus, Petitioners failed to assert a viable due process claim regarding the Dedicated Docket because they suffered no prejudice.

Second, Petitioners argue that technical difficulties and translation errors resulted in a due process violation. Petitioners have due process rights to competent translation services. *Kotasz v. INS*, 31 F.3d 847, 850 n.2 (9th Cir. 1994). But to demonstrate prejudice, they must show that "a better translation would have made a difference in the outcome of the hearing." *Id.* (quoting *Acewicz v. INS*, 984 F.2d 1056, 1063 (9th Cir. 1993)). Here, Petitioners fail to make such a showing. The interpreter asked Petitioners to repeat their responses when he needed to clarify their testimony, and the interpreter noted that it was "easy to clarify" confusion. Moreover, Petitioners do not identify any instances in the record of specific translation errors or technical glitches that affected the fairness of the proceeding. Because Petitioners failed to demonstrate that "defects in translation prejudiced the outcome of the hearing," Petitioners' due process claim related to these issues fails. *Aden v. Holder*, 589 F.3d 1040, 1047 (9th Cir. 2009).

Third, Petitioners argue they were deprived of their right to counsel. They argue that the IJ "actively kept Petitioners' attorney from consulting his file and

case notes during testimony," that their counsel should have been allowed to "consult[] with his Spanish speaking staff and his file in order to make proper objections to the translation and to track where the technical issues were affecting Petitioners' credibility," and that the IJ's "admonishment of normal attorney behavior . . . unduly interfered with Petitioners' right to be represented in the proceedings." None of these arguments demonstrate prejudice.

The IJ believed that counsel's assistant "was aiding [Petitioners] during their testimony as [they] were frequently observed looking away from the camera," and the IJ instructed counsel not to talk to anybody else during the hearing. But, even if it were improper for the IJ to prevent Petitioners' attorney from speaking to his Spanish speaking staff, Petitioners have not pointed to any instance in the record in which a translation error may have affected the outcome of the proceeding. Accordingly, Petitioners have not demonstrated the requisite prejudice to state a due process claim.

3. Adverse Credibility. We review adverse credibility determinations for substantial evidence. *Shrestha v. Holder*, 590 F.3d 1034, 1039 (9th Cir. 2010). "[O]nly the most extraordinary circumstances will justify overturning an adverse credibility determination." *Id.* at 1041 (quoting *Jibril v. Gonzales*, 423 F.3d 1129, 1138 n.1 (9th Cir. 2005)). The agency must "provide specific and cogent reasons in support of an adverse credibility determination," and it must refer to "specific

instances in the record." *Id.* at 1044 (citation omitted). Trivial or minor errors should not be considered, but "minor inconsistencies, when aggregated or when viewed in light of the total circumstances, may undermine credibility." *Id.* at 1043–44, 1043 n.4. Substantial evidence supports the BIA's finding that both Melgar's testimony and Perez's testimony were not credible.

The BIA identified material internal inconsistencies between Melgar's testimony and her declaration. First, in Melgar's written declaration, Melgar provided details and timelines of when and where specific gang threats against Perez occurred. But Melgar testified that she did not know when and where the gang threats occurred. Nor could she explain why, notwithstanding her lack of knowledge, these details were in her written declaration. Second, Melgar's testimony was inconsistent regarding whether the threats against Perez were reported to the police. Melgar's written declaration stated that Perez filed a police report at her insistence, but she testified that "[b]ecause of fear, we did not go [to the police]." Though Melgar now argues that this testimony "accurately represented the inconsistency of the family deciding whether or not to report the persecution to the police,"[5] substantial evidence supports the agency's finding that

_____

[5] Melgar also argues that there was either a translation error or glitch in the technology which led to this inconsistency in Melgar's testimony. But Petitioners' counsel did not object to the translation, nor do Petitioners proffer on appeal what the correct translation should have been.

7                                                                          24-2225

Melgar was not a credible witness.

Similarly, the BIA found material inconsistencies within Perez's testimony. Perez testified that he was not threatened in El Callejon, but that contradicted the police report he filed, which stated that he was threatened in El Callejon. Additionally, the agency found it "implausible" that gangs would look for Perez at his sister's house a two-and-a-half-hour drive away but never look for him at his own house. It was not error for the agency to make such a "common sense" adverse credibility finding. *Lalayan v. Garland*, 4 F.4th 822, 835 (9th Cir. 2021).

Moreover, the agency permissibly found that Perez was evasive and non-responsive in portions of his testimony. Perez was evasive when asked about the neighbor who witnessed the alleged gang threats. Taken with Perez's inconsistent testimony, there is substantial evidence in the record to support the agency's finding that Perez was not a credible witness.

Absent Petitioners' discredited testimony, there is no independent corroborative evidence that establishes their eligibility for asylum or withholding of removal. *See Wang v. Sessions*, 861 F.3d 1003, 1009 (9th Cir. 2017). Accordingly, substantial evidence supports the agency's denials of asylum and withholding of removal.

**PETITION DENIED.**